## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Afiniti, Ltd.,[1]<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 24-__12539__  ( ) |

### DECLARATION OF C. CHRISTIAN R. LUTHI IN SUPPORT OF VERIFIED PETITION AND MOTION UNDER CHAPTER 15 FOR (I) RECOGNITION OF A FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF JPL APPOINTMENT ORDER, (III) RECOGNITION OF SANCTION ORDER, (IV)APPROVAL OF FREE AND CLEAR TRANSFER OF ASSETS, (V) APPROVAL OF THE PROCEDURE GOVERNING THE CLOSING OF THIS CHAPTER 15 CASE, AND (VI) RELATED RELIEF

I, C. Christian R. Luthi, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

### INTRODUCTION

1.      I am a Barrister and Attorney duly-admitted to practice in Bermuda, a Director and the Chairman of the Bermuda law firm Conyers Dill & Pearman Limited ("**Conyers**"), and the Head of Conyers' Litigation & Restructuring Department, located at Clarendon House, 2 Church Street, Hamilton HM 11, Bermuda. Conyers is serving as special Bermuda counsel to Afiniti Ltd., an exempted company with limited liability incorporated under the laws of Bermuda (the "**Debtor**" or the "**Company**"). The Debtor is the ultimate holding company of 32 companies collectively doing business as "Afiniti" in the business of applied predictive artificial intelligence.

2.      I am over the age of eighteen and, except as otherwise indicated, all facts set forth in this declaration (this "**Declaration**") are based upon my personal knowledge, my opinion based

---

[1]  The Debtor's registration number is 45859. The location of the Debtor's registered office is Crawford House, 50 Cedar Avenue, Hamilton, Pembroke, HM 11, Bermuda.

upon my experience and knowledge of the Debtor and my review of relevant documents or information supplied to me. In preparing this Declaration, I have reviewed the (a) Chapter 15 Petition (as defined below), (b) Motion (as defined below), (c) documents prepared or filed in connection with the Bermuda Proceeding (as defined below), and (d) relevant provisions of the Bermuda Companies Act (as defined below) and other provisions of Bermuda law as they relate to chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**") and other aspects of U.S. bankruptcy law referred to in this Declaration. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

3.      On September 18, 2024, the Debtor commenced a provisional liquidation proceeding under Part XIII of the Companies Act 1981 (the "**Bermuda Companies Act**") entitled *In the Matter of Afiniti Ltd. (Provisional Liquidators Appointed for Restructuring Purpose*s*) and In the Matter of the Companies Act 1981*, pending before the Supreme Court of Bermuda (the "**Bermuda Court**"), Companies (Winding Up) Commercial Court, 2024: No. 265 (the "**Bermuda Proceeding**"), which remains pending.

4.      I submit this declaration in support of the (a) *Chapter 15 Petition for Recognition of a Foreign Proceeding* (the "**Chapter 15 Petition**") and (b) *Verified Petition and Motion Under Chapter 15 for (I) Recognition of a Foreign Main Proceeding, (II) Recognition of JPL Appointment Order, (III) Recognition of Sanction Order, (IV) Approval of Free and Clear Transfer of Assets, (V) Approval of the Procedure Governing the Closing of this Chapter 15 Case, and (VI) Related Relief* (the "**Recognition Motion**"), filed contemporaneously herewith.[2]

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Recognition Motion.

5.      This Declaration comprises matters that are statements of my view of Bermuda law or statements of fact.    Where the matters stated in this Declaration are statements regarding Bermuda law, such statements represent my view of Bermuda law as a Barrister admitted and authorized to practice in Bermuda.    Where the matters stated in this Declaration are statements of fact that are within my personal knowledge, they are true.    Where the matters stated in this Declaration that are statements of fact are not within my personal knowledge, they are derived, as appropriate, from documents maintained by the Registrar of Companies of Bermuda and/or from information supplied to me by or on behalf of the Debtor and are true to the best of my knowledge, information and belief.

## PERSONAL BACKGROUND AND QUALIFICATIONS

6.      I am the Head of Conyers' Litigation & Restructuring Department and the Chairman of Conyers with expertise in commercial litigation, insolvency and corporate restructurings.    I hold a B.A. in Philosophy from Trinity College and a Masters in Jurisprudence from Oxford University.  I joined Conyers as an associate in 1994, after being called to the Bar of England and Wales and became the Chairman in 2017. I am a member in good standing of the Bermuda Bar Association.

7.      I have considerable experience in matters related to Bermuda insolvency law. I have advised companies, creditors, and liquidators on a large number of winding-up proceedings, insolvent restructurings, and multinational reorganizations, a number of which were implemented by way of provisional liquidations in Bermuda.

8.      I am, together with other directors and associates at Conyers, Bermuda counsel to the Debtor in connection with the Bermuda Proceeding.

## STATEMENTS OF BERMUDA LAW AND PRACTICE

### A.    Sources of Bermuda Law

9.     Bermuda is a British Overseas Territory. As such, it is a self-governing but dependent territory of the United Kingdom. In common with other British Overseas Territories and former colonies, English law was introduced to Bermuda at the date of its settlement in 1612. The system of law in Bermuda is therefore founded on the English legal system, although there is a distinct body of Bermudian statutory law and Bermudian case law that has developed over the past 400 years.

10.     In particular, section 15 of the Supreme Court Act 1905 provides that the systems of law administered in Bermuda consist of (a) the common law of England, (b) the doctrines of equity of England and (c) the Acts of the Parliament of England of general application which were in force in England at the date of Bermuda's settlement on July 11, 1612, except where those laws have been altered by (1) United Kingdom legislation, since 1612, expressly made applicable to Bermuda, (2) local Bermuda legislation and (3) expansion or restriction of Bermuda common law since the year 1612. Law and equity are administered concurrently, and in any conflict, the rules of equity generally prevail.

### B.    The Bermuda Court System

11.     The Bermuda Court is the court of first instance in Bermuda with unlimited jurisdiction for all civil and commercial disputes with a value in excess of BD$25,000. The Bermuda Court determines any proceedings relating to the affairs of companies incorporated in Bermuda under the Bermuda Companies Act. Relatedly, the Bermuda Court is also generally responsible for the resolution of insolvency cases in Bermuda, which includes provisional liquidation proceedings.

12.     The Court of Appeal for Bermuda (the "**Court of Appeal**") is the first-tier appellate court in Bermuda, made up of three judges who sit in quarterly sessions. It entertains appeals from the Bermuda Court.

13.     Appeals against decisions of the Court of Appeal are entertained by the Judicial Committee of the Privy Council (the "**Privy Council**"), which, although based in the United Kingdom, is Bermuda's highest appellate court. The Privy Council is ordinarily made up of a five-judge tribunal that sits in London. Its composition consists of members of the Supreme Court of the United Kingdom (formerly the House of Lords, and the highest appellate court for England and Wales, Scotland and Northern Ireland), as well as other senior judges from the Commonwealth jurisdictions.

### C.     The Common Law Principle of Precedent Is Applicable in Bermuda

14.     Bermuda law, following English law in this regard, is based upon the common law principle of precedent. Under the doctrine of precedent, certain judicial decisions are 'binding' on other judges, and their reasoning or 'ratio decidendi' must be followed and applied, unless they are properly capable of being distinguished. A judge of the Bermuda Court is bound to follow and apply any relevant decision of the Court of Appeal and any relevant decision of the Privy Council. The Court of Appeal, in turn, is bound by any relevant decision of the Privy Council. Previous relevant decisions of the Privy Council are binding on the Privy Council itself, except in exceptional circumstances. The Privy Council can depart from a previous decision where it is right to do so, when, for example, the previous decision is thought to be wrong, there have been changes or developments to the law or the previous decision is thought to have led to results that were unjust or contrary to public policy.

15.     Under the doctrine of precedent, certain judicial decisions, or parts thereof (such as 'ex parte' rulings or 'obiter dicta'), may be 'persuasive,' and, depending on the facts of the case,

the seniority and experience of the tribunal, and the quality of their reasoning, should ordinarily be followed and applied, unless they are plainly wrong or are properly capable of being distinguished. In particular, decisions of the Bermuda Court are persuasive and should generally be followed by other judges of the Bermuda Court.

16.     Furthermore, Bermudian courts often treat English case law as being persuasive for three main reasons.

17.     First, many Bermuda statutes are based upon current or former United Kingdom legislation. As a result, decisions of the Superior Courts of England and Wales in respect of provisions of United Kingdom statute law that are identical to or similar to Bermuda law are considered in Bermuda to be highly persuasive authority.

18.     Secondly, the decisions of the United Kingdom Supreme Court on matters of common law and statutory interpretation are highly persuasive in Bermuda since the United Kingdom Supreme Court, sitting as the highest appellate Court for the United Kingdom, and the Privy Council, sitting as the highest appellate Court for Bermuda, share common membership. *See De Lasala v De Lasala* [1980] A.C. 546, 558.

19.     Thirdly, where issues of common law in Bermuda have not been expressly considered by the Bermuda courts, the Bermuda courts often find assistance in the consideration of such issues in reasoned judgments or rulings by judges of the Superior Courts of England and Wales, whether in the High Court of Justice, the United Kingdom Court of Appeal, or the United Kingdom Supreme Court. Furthermore, depending on the facts and the circumstances (including the legislative background, the jurisdictional and legal similarities, and the perceived quality of the tribunal and its reasoning), the Bermuda courts often find assistance in the consideration of issues in reasoned judgments by judges of the superior courts of other common law and offshore

jurisdictions, such as the British Virgin Islands, the Cayman Islands, Australia, New Zealand, Hong Kong, Singapore, and Canada. In practice, Privy Council decisions, on appeal from other common law jurisdictions, are treated as highly persuasive and of the same practical effect as if binding if the relevant common law or legislation is similar to the law of Bermuda.

**D.    Bermuda Insolvency Proceedings**

20.    As noted above, the Bermuda Court has jurisdiction over the affairs of companies that are incorporated in Bermuda. A compulsory winding-up proceeding is commenced by the filing of a petition with the Bermuda Court seeking a winding-up order which, if granted, results in the formal liquidation of the insolvent company.  A petition for a winding-up order may be filed by, among others, the insolvent company itself or any of its creditors.  The liquidation is conducted under the supervision of the Bermuda Court and, as I understand from the Debtor's U.S. counsel, Latham & Watkins LLP, is roughly analogous to a proceeding under chapter 7 of the Bankruptcy Code and a provisional liquidation, discussed below, may be considered similar in various respects to a liquidating case under chapter 11 of the Bankruptcy Code. The liquidation provides for a centralized process to resolve claims against an insolvent company and to issue distributions to creditors, to the extent sufficient assets are available.

21.    The Bermuda Court has jurisdiction to grant a winding-up order under Part XIII of the Bermuda Companies Act on any of eight separate grounds, including, among others:

> (i)     the company (by way of a special resolution of the shareholders or by its board of directors) has resolved that the company shall be wound-up by the Bermuda Court;
>
> (ii)    the company is unable to pay its debts, taking into account contingent and prospective liabilities; and

> (iii)    the Bermuda Court is of the opinion that it is just and equitable that the company be wound-up.[3]

22.    In certain circumstances, as in this instance, one or more provisional liquidators may be appointed in a compulsory winding-up immediately after the presentation of the petition for a winding-up order, but prior to the making of such a winding-up order. The Bermuda Court's jurisdiction to make such an order is contained in sections 170 (2) and 170 (3) of the Bermuda Companies Act:

> (2) The Court may on the presentation of a winding-up petition or at any time thereafter and before the first appointment of a liquidator appoint a provisional liquidator who may be the Official Receiver or any other fit person.
>
> (3) When the Court appoints a provisional liquidator, the Court may limit his powers by the order appointing him.

*Id.*

23.    The Bermuda Companies Act, as supplemented by Bermuda common law, governs the insolvency of companies in Bermuda, and along with the Companies (Winding-Up) Rules 1982, provides that a Bermuda Court may appoint one or more provisional liquidators who may be the Official Receiver[4] or any other fit person following the presentation of a winding-up petition, and sets forth the permitted scope and powers of provisional liquidators. When the Bermuda Court appoints a provisional liquidator, the Bermuda Court may limit their powers by the order appointing them. *See* § 170(3) of the Bermuda Companies Act. A provisional liquidator remains in office until removed and released by the Bermuda Court or until creditors elect a

---

[3]    The other grounds are set out at section 161 of the Bermuda Companies Act, and are (i) a failure to hold a statutory meeting, to lay financial accounts, or to appoint an auditor, (ii) failing to commence business within one year of incorporation or suspending business for a whole year, (iii) carrying on an activity restricted under the Bermuda Companies Act without the required licence, (iv) carrying on an activity prohibited by the Bermuda Companies Act, or (v) obtaining a consent from the Minister under the Bermuda Companies Act by way of material misstatement.

[4]    The Official Receiver is a public officer appointed under section 3 of the Bermuda Companies Act tasked with discharging the duties conferred or imposed upon him under the Bermuda Companies Act or any other act.

permanent liquidator, which in practice is usually the same individual who was acting as provisional liquidator.

24.     The powers and duties of a provisional liquidator are therefore prescribed and limited by the terms of the order appointing them. A provisional liquidator is an officer of the Bermuda Court that is subject to the control and supervision of the Bermuda Court and its role is usually to ascertain, oversee and preserve the assets of the company seeking the winding-up petition for the benefit of creditors, albeit while management stays in control.  A provisional liquidator is required to be independent from the management of a company and its creditors and is required to act in an evenhanded fashion between creditors or groups of creditors (i.e., for the benefit of the Company's creditor body as a whole and not just a single creditor or group of creditors) and in accordance with the terms of the order appointing them.  If any person is dissatisfied by the provisional liquidator's act, omission or decision, they may apply to the Court and request that the Court reverse or modify the act or decision complained of. *See* § 176(5) of the Bermuda Companies Act.   Accordingly, provisional liquidation proceedings in Bermuda are judicial and administrative in character.

25.     Pursuant to section 167(4) of the Bermuda Companies Act, the appointment of a provisional liquidator or the making of a winding-up order brings into effect an automatic statutory stay of actions and proceedings against the company, similar to the automatic stay granted upon entry of the order for relief under the Bankruptcy Code, with the effect that actions may not be commenced or continued against the company without leave of the Bermuda Court and subject to such terms as the Bermuda Court may impose.  The automatic stay does not prevent secured creditors from exercising their rights under validly created security agreements.

26.     Provisional liquidation proceedings in Bermuda are also collective in nature because they operate for the benefit of a company's creditor or member body as a whole, and not just a single creditor or member. Provisional liquidators have the duty to protect and have oversight of (and in certain circumstances, take possession of) a company's property pursuant to the provisions of the Bermuda Companies Act, which further reflects the collective nature of Bermuda liquidation proceedings generally.   The precise scope of the provisional liquidators' remit is defined by their appointment order.   The Bermuda Proceeding will be utilized to implement a proposed restructuring, which will be a Bermuda Court-sanctioned arrangement.   Accordingly, I believe that the Bermuda Proceeding (together with the JPL Appointment Order (defined below) and the Sanction Order (defined below)) is a "foreign proceeding" as that term is used in section 101(23) of the Bankruptcy Code, based on my understanding thereof.

**E.     The Debtor's Bermuda Proceeding**

27.     On September 18, 2024, the Company commenced the Bermuda Proceeding by filing with the Bermuda Court a petition (the "**Winding-Up Petition**") and a summons (the "**Appointment Summons**") seeking the appointment of Mike Morrison and Charles Thresh as the Debtor's joint and several "limited powers" or "light-touch" provisional liquidators of the Company for the purposes of the Company's restructuring (the "**JPLs**"). True and correct copies of the Winding-Up Petition and Appointment Summons are attached hereto as **Exhibit 1** and **Exhibit 2**, respectively.

28.     On September 19, 2024, the Bermuda Court heard the Appointment Summons and entered an order appointing the JPLs (the "**JPL Appointment Order**").   A true and correct copy of that order is attached hereto as **Exhibit 3**.   The Winding-Up Petition remains pending.   The JPL Appointment Order mandated that the JPLs are to, among other things, monitor and consult with the existing board of directors of the Debtor.   As such, while the Debtor's existing board remains

in place like a debtor-in-possession under the Bankruptcy Code, the JPLs will provide a supervisory role and in that capacity ensure that creditors' interests are considered. The JPL Appointment Order also appointed the Company as its duly-authorized foreign representative (the "**Foreign Representative**") and authorized it to seek recognition of the Bermuda Proceeding under chapter 15 of the Bankruptcy Code. JPL Appointment Order, ¶ 1(g).

29.     The Debtor's assets and affairs are, however, to be subject to the control and supervision of the Bermuda Court during the Bermuda Proceeding. As noted above, the JPLs' powers are also subject to the control and supervision of the Bermuda Court, which has provided specific powers under the JPL Appointment Order. Pursuant to the JPL Appointment Order, the JPLs are also to provide a written report to the Bermuda Court from time to time or as otherwise requested by the Bermuda Court. *See* JPL Appointment Order ¶ 1(i).

30.     On October 2, 2024, the JPLs filed and served a summons in the Bermuda Proceeding seeking entry of an order, among other things, sanctioning and approving the Debtor's proposed restructuring. Additional detail about the Debtor's proposed restructuring is set forth in the declaration of Hassan Afzal, filed contemporaneously herewith. On October 23, 2024, the Bermuda Court held a preliminary hearing to consider entry of an order granting such sanction (the "**Sanction Order**"). The Debtor's proposed form of Sanction Order is attached hereto as **Exhibit 4.** At the hearing, in light of certain opposition and a request for adjournment by the Debtor's founder and former CEO, the Bermuda Court scheduled a further, substantive hearing with respect to the proposed Sanction Order for November 6-7, 2024.

*[Remainder of page left blank intentionally]*

11

31.     I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct to the best of my knowledge, information and belief.


Executed on this 23rd day of October 2024
in Hamilton, Bermuda


/s/

Christian R. Luthi
CONYERS DILL & PEARMAN
Clarendon House, 2 Church Street
Hamilton HM 11
Bermuda

## Exhibit 1

**Winding-Up Petition**



IN THE SUPREME COURT OF BERMUDA

COMMERCIAL COURT

COMPANIES (WINDING UP)

2024: No. 265

IN THE MATTER OF A COMPANY.

AND IN THE MATTER OF THE COMPANIES ACT 1981

---

## PETITION

---

**THIS HUMBLE PETITION** of Afiniti Ltd. ("**Company**") whose registered office is at Crawford House, 50 Cedar Avenue, Hamilton HM11 Bermuda **showeth as follows:**

1.    The Company was incorporated in Bermuda under the Companies Act 1981 ("**Act**") as an exempt company limited by shares on 12 October 2011 under its original name, Satmap International Holding, Ltd.

2.    The Company's registered office is at Crawford House, 50 Cedar Avenue, Hamilton. The authorised share capital of the Company is $12,000 which is divided into (i) 120,000,000 common shares of par value US$0.00001 each, (ii) 10,000,000 Class A preference shares of par value US$0.00001 each; (iii) 16,297,761 Class B preference shares of par value US$0.00001 each; (iv) 10,702,239 Class C preference shares of par value of par value US$0.00001 each, (v) 3,000,000 Class D preference shares of par value of par value US$0.00001 each and (vi) 6,000,000 Class E preference shares of par value US$0.00001 each.

3.    The Company also has four classes of preferred equity, being series A, B, C and E.

4.    The issued share capital is as follows:

| Category | Number Outstanding |
|---|---|
| Common Shares | 24,699,310 |
| Class A Preference Shares | 5,180,031 |
| Class B Preference Shares | 1,595,593 |
| Class C Preference Shares | 9,767,592 |
| Class D Preference Shares | 0 (redeemed) |
| Class E Preference Shares | 1,919,792 |

Assets of the Company

5.    The Company's primary asset is its various wholly owned direct and indirect subsidiary operating entities (collectively, the "**Companies**"), which together operate the business. The operating subsidiaries of the Companies are a leading provider of applied predictive artificial intelligence. The main product offering is a patented technology for use in customer service contact centres that optimally pairs customers with contact centre agents based on machine learning based algorithms that seek to predict optimal outcomes. The technology is used globally in the healthcare, telecommunications, travel, hospitality, insurance, and banking industries and across multiple customer experience channels.

6.    The value of the Company, based on a going-concern valuation of the business, is approximately $275 million to $350 million.

2.    LEGAL - 24991271.1

Liabilities

7.   The Company and its US operating subsidiary, Afiniti, Inc., are parties to a first-lien secured credit agreement dated 13 June 2019 (as amended, the "**Credit Agreement**"). The Company guaranteed repayment of all sums loaned under the Credit Agreement and granted fixed and floating security for the same over substantially all of its assets. The lenders under the Credit Agreement are a syndicate of lenders ("**Secured Lenders**").

8.   Afiniti, Inc. borrowed the initial term loan under the Credit Agreement in the aggregate principal amount of US$125.0 million (the "**First Term Loan**"). Pursuant to an amendment to the Credit Agreement, Afiniti, Inc. borrowed an additional incremental amount of US$25.0 million in May 2020 (together with the First Term Loan, the "**Initial Term Loans**"). Pursuant to various amendments to the Credit Agreement executed between November 2020 and March 2022, Afiniti, Inc. borrowed additional term loans in the combined principal amount of US$306.25 million (collectively, the "**Incremental Term Loans**" and, together with the Initial Term Loans, the "**Term Loans**").

9.   The Term Loans' total balance (including any interest paid in kind) is US$**508,744,859.71** summarized as follows:

| Credit Agreement | Original Maturity Date | Principal Balance |
|---|---|---|
| 2019 Credit Agreement | 13 June 2024 | US$125,000,000 |
| May 2020 Amendment | 13 June 2024 | US$25,000,000 |
| November 2020 Amendment | 17 November 2025 | US$100,000,000 |
| December 2020 Amendment | 17 November 2025 | US$50,000,000 |
| March 2021 Amendments | 17 November 2025 | US$40,000,000 |

2.   LEGAL - 24991271.1

| | | |
|---|---|---|
| May 2021 Amendment | 17 November 2025 | US$75,000,000 |
| March 2022 Amendment | 7 March 2027 | US$41,250,000 |
| **Total Principal Balance** | | **US$456,250,000** |
| **Total Interest Paid In Kind (08 July 24)** | | **US$52,494,859.71** |
| **Total Funded Debt Obligations** | | **US$ 508,744,859.71** |

10.    In addition to the Term Loans, the Company has the following material liabilities:

      a.   Trade payable/accrued liabilities    US$ 18.2m

      b.   ASC 842 Lease Liabilities    US$ 9.69m

      c.   Liberty Equipment Financing    US$ 8.8m

      d.   Partnership Fee    US$ 4.1m

      e.   Wingspire Equipment Financing    US$ 2.3m

      f.   Deferred Tax Liability    US$ 1.87m

      g.   Deferred Revenue    US$ 1.72m

      h.   Related Party Payable    US$ 1.71

      i.   Other liabilities    US$ 7.52m

11.    The Company's liabilities therefore total approximately US$564 million.

<u>Attempts to Resolve Financial Difficulties</u>

12.    On 29 January 2023, the Board formed a transaction committee to (i) assist the Board in fulfilling its responsibilities relating to the Company's long-term strategic plan and strategies, (ii) oversee the review and evaluation of any potential strategic transactions, (iii) if deemed desirable, oversee the negotiation of the terms and conditions of one or more strategic

4

transactions on behalf of the Company, and (iv) recommend any appropriate strategic transaction to the Board for review and approval.

13.     The Company explored a number of strategic transactions with the aim of repaying in full the Initial Term Loans. Chief amongst these transactions was a refinancing of part or all of the Term Loans by one or more new lenders in the form of new senior or subordinated debt. In November 2023 the Company engaged an investment bank to run a process to solicit interest in refinancing proposals, or, as an alternative, some other form of strategic transaction such as a further equity raise. The Company did not receive any complete proposals for an equity or subordinated debt financing and so was unable to repay the Initial Term Loans in full.

14.     The Company began discussing with the Secured Lenders possible solutions to address the upcoming 13 June 2024 maturity of the Initial Term Loans. The discussions with the Secured Lenders resulted in an agreed restructuring term sheet dated 7 June 2024.  In connection therewith, the Secured Lenders under the Initial Term Loans extended the 13 June 2024 maturity date to 29 July 2024 pursuant to Amendment No. 9 to the Credit Agreement and again to 12 September 2024 pursuant to Amendment No. 10 to the Credit Agreement. Shortly prior to filing, the Company and Secured Lenders executed Amendment No. 12 to the Credit Agreement which extended the maturity date of the Company's guarantee to the date of filing this Petition.

15.     The Company and the Secured Lenders utilized the time provided by the maturity extensions to continue negotiations toward an agreed restructuring path. The negotiations culminated in the Company and Secured Lenders entering into a Restructuring Support Agreement dated 17 September 2024 (the "**RSA**"), which governs the Company's proposed restructuring (the "**Proposed Restructuring**").

2.   LEGAL - 24991271.1

16.    The Proposed Restructuring contemplates a transaction in which the Company transfers substantially all of its assets to a new company that will be majority owned by the Secured Lenders in exchange for the Company being released from its guarantee of the Term Loans. The net result of this transaction, if effected, is that ownership of the Companies would be transferred to a new company controlled by the Secured Lenders.

17.    It is a condition of the Proposed Restructuring that it be implemented following the appointment of provisional liquidators with limited powers for restructuring purposes and that the JPLs seek Court sanction to enable any stakeholders who wish to do so to be able to address the Court on the Proposed Restructuring.

Insolvency

18.    The Company is unable to pay the Initial Term Loans by their stated maturity.

19.    Further, the liabilities of the Company significantly outweigh the value of the assets. The Company is therefore balance sheet insolvent.

20.    The Company is currently insolvent in that it is unable to pay its debts as they fall due.

21.    The board of directors of the Company determined that it would be in the best interests of the Company and its stakeholders to place the Company into provisional liquidation under the provisions of Part XIII of the Companies Act 1981 by presenting this petition seeking to wind up the Company, and to seek the immediate appointment of liquidators in order to preserve and realise the value of the assets.

22.    On 13 September 2024 the Board of the Company resolved to present this petition to commence these proceedings.

6

**YOUR PETITIONER HUMBLY PRAYS THAT:**

1. The Company be wound up by this Honourable Court under the provisions of the Companies Act 1981.

2. Michael Morrison and Charles Thresh of Teneo (Bermuda) Ltd be appointed as joint provisional liquidators of the Company.

3. The period for convening the first meetings of creditor and contributories be extended for six months.

DATED this 18 day of September 2024

**Conyers Dill & Pearman**
Attorneys for the Company

**THE ABOVE PETITION** having been presented to this Court on Wednesday the 18 day of September 2024 it is ordered that this Petition shall be heard before the Court sitting on Friday, the 1 day of November 2024 at 9.30 o'clock in the before noon.

**DATED** this 18 day of September 2024

for the REGISTRAR

2.  LEGAL - 24991271.1

IN THE SUPREME COURT OF BERMUDA

COMPANIES (WINDING UP)

COMMERCIAL COURT

2024: No. 265

IN THE MATTER OF A COMPANY

AND IN THE MATTER OF THE COMPANIES ACT 1981

---

**PETITION**

---





**CONYERS DILL & PEARMAN LIMITED**
**Barristers & Attorneys**
**Clarendon House**
**2 Church Street, Hamilton**
**BERMUDA**

**RXW/gm/401937/24991271**

**Exhibit 2**

**Appointment Summons**

IN THE SUPREME COURT OF BERMUDA

COMPANIES (WINDING UP)

COMMERCIAL COURT

2024: No. 265

IN THE MATTER OF A COMPANY

AND IN THE MATTER OF THE COMPANIES ACT 1981

---

### EX PARTE SUMMONS

---

**TAKE NOTICE** that Afiniti Ltd. ("**Company**") will appear by counsel before a Judge of the Supreme Court of Bermuda sitting in Chambers at 10:30am on Thursday, the 19th day of September 2024 or so soon thereafter as counsel may be heard upon the application of the Company for the following orders:

1.     The appointment of Mike Morrison and Charles Thresh of Teneo (Bermuda) Ltd. as joint provisional liquidators of the Company with limited powers for restructuring purposes;

2.     That the costs of this application be paid out of the assets of the Company; and

3.     Such other order as the Court may see fit.

Dated this 18 day of September    2024

REGISTRAR

IN THE SUPREME COURT OF BERMUDA

COMPANIES (WINDING UP)

COMMERCIAL COURT

2024: No. 265

IN THE MATTER OF A COMPANY

AND IN THE MATTER OF THE COMPANIES ACT 1981

---

**EX PARTE SUMMONS**



**CONYERS DILL & PEARMAN LIMITED**
Barristers & Attorneys
Clarendon House
2 Church Street, Hamilton
BERMUDA

**RXW/gm/401937/24982428**

**Exhibit 3**

**JPL Appointment Order**

**IN THE SUPREME COURT OF BERMUDA**

**COMPANIES (WINDING UP)**

**COMMERCIAL COURT**

**2024: No.** 265

**IN THE MATTER OF A COMPANY**

**AND IN THE MATTER OF THE COMPANIES ACT 1981**

---

**ORDER**

---

**UPON HEARING COUNSEL** for Afiniti Ltd. (the "**Company**")

**AND UPON READING** the Petition filed herein and the Affidavit of Mohammed Khaishgi dated 18 September 2024

**IT IS HEREBY ORDERED** as follows:

1.      That Michael Morrison and Charles Thresh of Teneo (Bermuda) Ltd. are hereby appointed joint provisional liquidators ("**JPLs**") of the Company with the following powers:

   (a)      to review the financial position of the Company;

   (b)      to monitor the continuation of the business of the Company by the existing board of directors of the Company (the "**Board**");

   (c)      to consult with the creditors of the Company in determining the most appropriate manner to realise value for the benefit of the creditors;

   (d)      to take such steps as they deem appropriate to sell, transfer and/or with respect to the disposition of the assets of the Company;

(e)  to take such steps as they deem appropriate with respect to any settlements, compromises or arrangements (including seeking such sanction as the JPLs may consider necessary or desirable in the circumstances);

(f)  to sign off on and execute agreements (including any documents to facilitate the any sale or transfer), pleadings, or any other document (with such court sanction as the JPLs may consider appropriate in the circumstances) on behalf of the Company;

(g)  if deemed necessary and/or appropriate by the JPLs, to apply to any foreign court (wherever situated) for recognition of their appointment or in connection with any other proceedings to take advantage of any insolvency or bankruptcy protections that such foreign law, procedures or proceedings may provide to the Company. Without prejudice to the foregoing, the Company acting through the Board shall be the Company's authorised foreign representative for the purpose of the UNCITRAL Model Law and Chapter 15, Title 11 of the United States Code;

(h)  the JPLs shall be entitled to receive advance materials, receive advance notice of, and, at the expense of the Company, attend all Board meetings and such meetings of management as the JPLs request and shall be consulted prior to:

(i)  the sale, transfer, or other disposition of any business, operation, subsidiary, division or other significant asset of the Company;

(ii)  the incurrence of indebtedness or borrowing of money, whether pursuant to agreements with suppliers or pursuant to loan arrangements with financing institutions, and the granting of security in respect of the same, and the guaranteeing of such indebtedness or borrowings of affiliates;

(iii)  the Board seeking leave to continue or take any steps in any proceedings to which the Company is a party.

(i)  to provide a written report to this Court from time to time and as this Court may otherwise request;

(j)  to retain and employ barristers, attorneys, and solicitors, and such other agents and professional persons as the JPLs deems fit, in Bermuda and elsewhere as the

JPLs deems appropriate for the purpose of advising and assisting in the execution of their powers;

(k)   to render and pay invoices out of the assets of the Company for the JPLs' own remuneration at their usual and customary rates (and this shall include all costs, charges and expenses of their attorneys and all other agents, managers, accountants and other persons that the JPLs may employ), subject to such arrangements as agreed or as may be agreed with the Company (or with the approval of the Court) in the context of the overall restructuring process;

(l)   if deemed necessary, and in the interests of the creditors of the Company, to seek the assistance of any other courts as may be considered appropriate;

(m)   to set up, maintain, and control bank accounts (whether jointly with the Company or otherwise) at any bank or financial institutions situated in Bermuda or elsewhere as appropriate, in their own names or in the name of the Company, and accept deposits into and pay monies into such accounts for the purpose of meeting the payment of the fees and expenses of the JPLs, including all costs, charges and expenses of their attorneys and all other agents, managers, accountants and other persons that the JPLs may employ, in each case, subject to the appropriate procedures being agreed with the Company (acting reasonably) as to how fees shall be determined;

(n)   subject to the Company's power at 1(g) above to act as the Company's authorised foreign representative for the purposes stated therein, to seek recognition of the provisional liquidation or the appointment of the JPLs in any jurisdiction the JPLs consider necessary, or both, together which such other relief the JPLs may consider necessary for the proper exercise of their functions within those jurisdictions and to make applications to the court(s) of such jurisdiction for that purpose; and

(o)   to do all things incidental to the exercise of the foregoing powers.

2.   Payments in the ordinary course of business and payments to professional advisors of the Company, the JPLs, and Secured Lenders (as defined in the Petition and including Allen Overy Shearman Sterling US LLP, Appleby (Bermuda) Limited, Akin Gump Strauss Hauer

Feld, LLP and Kirkland & Ellis LLP) and any related fees, disbursements and other charges of other counsel, including local counsel, consultants and service companies, shall not be avoided by virtue of section 166 of the Companies Act 1981. No other payments or dispositions of the Company's property shall be made or effected without the direct or indirect approval of the JPLs but no such payment or other disposition made or effected by or with the authority or approval of the JPLs in carrying out their duties and functions and in the exercise of their powers under this Order shall be avoided by virtue of the provisions of section 166 of the Companies Act 1981.

3.      In the event that a winding-up order is made against the Company, any fees and expenses of the JPLs, including all costs, charges and expenses of their attorneys and all other agents, managers, accountants, and other persons the JPLs may employ, which are payable in accordance with the terms of the orders which may be made by this Court, and which are outstanding at the date of the winding-up order, shall be treated as fees and expenses properly incurred in preserving, realising or getting in the assets of the Company for the purposes of Rule 140 of the Companies (Winding-Up) Rules 1982.

4.      Save as are specifically set out herein:

(a)     the JPLs shall be responsible for the realisation of the value of the Company's assets but shall have no general or additional powers or duties with respect to the day to day running of the Company;

(b)     prior to any winding-up order being made, the JPLs shall have no duties with respect to the books and records of the Company, although they may receive from the Board such Company books and records as they may request; and

(c)     save for those powers granted to the JPLs by this order, and the Protocol Agreement agreed to as between the Company, its Authorised Managers (as defined therein), and the JPLs, the Board shall continue to manage the Company's affairs in all respects and exercise the powers conferred upon it by the Company's Memorandum of Association and Bye-laws, provided always that, should the JPLs consider at any time that the Board is not acting in the best interests of the Company and its creditors, the JPLs shall have the power to report same to this Court and seek such directions from this Court as appropriate.

5.    Leave is hereby granted pursuant to section 167(4) of the Companies Act 1981 to permit case 2024: 112 to proceed.

6.    The Company shall provide the JPLs with such information as the JPLs deem necessary to properly to discharge their functions under this Order and as an officer of this Court.

7.    The JPLs shall be at liberty to submit to the Registrar of the Supreme Court of Bermuda bills of costs for taxation for all costs, charges, and expenses of those persons or firms employed by them, with such taxation to be on an attorney and own client basis with respect to attorneys and on an equivalent basis for all managers, accountants, and other persons.

8.    The powers of the JPLs may be exercised jointly and severally.

9.    The JPLs shall not be required to give security for their appointment.

10.    The Petitioner's costs of this application shall be taxed and paid out of the assets of the Company on a solicitor and own client basis.

Dated this    19    day of September 2024

CHIEF JUSTICE/PUISNE JUDGE

IN THE SUPREME COURT OF BERMUDA

COMPANIES (WINDING UP)

COMMERCIAL COURT

2024: No. 265

IN THE MATTER OF A COMPANY

AND IN THE MATTER OF THE COMPANIES ACT 1981

---

**ORDER**

---





**CONYERS DILL & PEARMAN LIMITED**
Barristers & Attorneys
Clarendon House
2 Church Street, Hamilton
BERMUDA

RXW/gm/401937/25003675

## Exhibit 4

**Proposed Sanction Order**

**IN THE SUPREME COURT OF BERMUDA**

**(COMMERCIAL COURT)**

**COMPANIES (WINDING UP)**

**2024: No. 265**

**IN THE MATTER OF AFINITI, LTD. (JOINT PROVISIONAL LIQUIDATORS APPOINTED FOR RESTRUCTURING PURPOSES)**

**AND IN THE MATTER OF THE COMPANIES ACT 1981**

---

**DRAFT ORDER**

---

**UPON** the application by Charles Thresh and Michael Morrison of Teneo (Bermuda) Ltd., acting as the joint provisional liquidators (the "**JPLs**") of Afiniti, Ltd. (joint provisional liquidators appointed for restructuring purposes) (the "**Company**"), by *inter partes* summons filed on 25 September 2024 (the "**Sanction Application**")

**AND UPON READING** the Affidavit of Charles Thresh sworn on 25 September 2024 and the exhibits thereto ("**Thresh 1**") sworn on behalf of the JPLs

**AND UPON HEARING** Counsel for the JPLs, Counsel for the Company and Counsel for VCP Capital Markets, LLC, in its capacity as collateral agent and administrative agent (the "**Term Loan Agent**") under a Term Loan Credit Agreement, dated 13 June 2019 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), among Afiniti, Inc., the Company, the other guarantors party thereto, the Term Loan Agent and each lender from time to time party thereto (the "**Secured Lenders**")

**AND WHEREAS** the Company granted under a Debenture dated 13 June 2019 (the "**Debenture**") to the Term Loan Agent, for the Secured Lenders under the Credit Agreement, a fixed and floating charge over substantially all of its assets

**AND WHEREAS** the Company is in financial distress and insolvent, as set out in Thresh 1, and (a) the Company and (b) the Term Loan Agent and the Secured Lenders (the Term Loan Agent and Secured Lenders together, the "**Secured Parties**") have agreed a compromise or

arrangement in the form of a restructuring to be structured and implemented as part of the Transactions (as defined below), and in aid of the same the Company has entered, together with Afiniti, Inc. and their respective subsidiaries, and the Secured Parties, into a Restructuring Support Agreement dated 17 September 2024 (as amended, modified or supplemented, the "**RSA**")

**AND WHEREAS** the proposed restructuring will include several integrated transactions (together, representing the restructuring, the "**Transactions**"), which are more fully defined at paragraph 4 of Thresh 1, as part of the broader proposed restructuring, as defined and explained in detail in paragraph 34 of Thresh 1

**AND UPON** the Court being satisfied that, in facilitating the Transactions, the JPLs will not be acting in breach of their duties

**AND BY CONSENT** of the Company and the Secured Parties

**IT IS HEREBY ORDERED** that:

1.     The JPLs' entry into the Transactions is sanctioned and approved pursuant to sections 175(1)(e) and 175(2)(a) of the Companies Act 1981.

2.     Pursuant to section 176(3) of the Companies Act 1981, the JPLs are authorised to undertake all necessary steps and actions in furtherance of the Transactions.

3.     In relation to paragraph 1 of this Order, the transaction documents in substantially the same form as referred to and set out in Schedule "A" annexed to this Order are approved and the disposition and transfer of any and all assets pursuant to and in accordance with the SATA and STA shall be free and clear of all liens, claims, charges and other encumbrances (including, without limitation, under any contract, corporate document, or applicable Bermuda law) of any kind or nature whatsoever to the extent the Court has jurisdiction over such assets, and no such lien, claim, charge or encumbrance may be asserted against either Holdco or Newco or any of their respective assets to the full extent of Bermuda law.

4.     For the avoidance of doubt, no steps required or undertaken, or both, to implement the Transactions shall be avoided by virtue of section 166 of the Companies Act 1981.

30969265.8.M7796.A04375

5.     The JPLs' and the Company's costs of this application shall be paid out of the assets of the Company as fees and expenses properly incurred in preserving, realizing or getting in the assets under Rule 140 of the Companies (Winding-Up) Rules 1982.

**DATED** this        day of              2024

_____
**The Hon. Chief Justice/Puisne Judge**

**IN THE SUPREME COURT OF BERMUDA**

**(COMMERCIAL COURT)**

**COMPANIES (WINDING UP)**

**2024: No. 265**

**IN THE MATTER OF AFINITI, LTD. IN PROVISIONSAL LIQUIDATION FOR RESTRUCTURING PURPOSES)**

**AND IN THE MATTER OF THE COMPANIES ACT 1981**

---

**ORDER**

---



**Walkers (Bermuda) Limited**
**Park Place**
**55 Par-La-Ville Road**
**Third Floor**
**Hamilton HM 11**
**Bermuda**
**Tel: 441 242 1500**
**Ref: KT/SW/DL/A04375**

# SCHEDULE A
## TRANSACTION DOCUMENTS

6.      The Stock and Asset Transfer Agreement by and between the Company and Holdco (as defined therein) and in substantially the form exhibited to <u>Exhibit CT-1</u> of Thresh 1 (the **"SATA"**), including without limitation:

(a)      the disposition and transfer of the assets, including, without limitation, the intellectual property assets of the Company to Afiniti AI Holdings, LLC, a Cayman Islands limited liability company and wholly owned subsidiary of the Company (**"Holdco"**), and the assumption and assignment and/or transfer of the specified contracts of the Company to Holdco; and

(b)      the disposition and transfer, immediately thereafter, of the rights, title, and interests in the Transferred IP Assets (as defined in the SATA) from Holdco to Afiniti AI Limited, an Irish private limited company (**"IP Purchaser"**), and the assumption by IP Purchaser of Assumed IP Liabilities (as defined in the SATA), in each case pursuant to, and in accordance with, the terms of the SATA.

7.      The Securities Transfer Agreement (the **"STA"**) between the Company and Afiniti Newco Holdings, LLC, a Delaware limited liability company (**"Newco"**), an entity formed and controlled by an affiliate of the Term Loan Agent, in substantially the form exhibited to <u>Exhibit CT-1</u> of Thresh 1, including without limitation, the disposition and transfer of all of the issued and outstanding shares of capital stock of Afiniti, Inc., a Delaware corporation (the **"USCo Shares"**), and all of the issued and outstanding membership interests of Holdco (the **"Holdco Interests"** and, together with the USCo Shares, the **"Securities"**) as part of the compromise of the Company's primary obligation under its guarantee of the liabilities owed to the Secured Lenders under the Credit Agreement.

8.      The release of claims, matters, disputes, and differences, whether known or unknown, suspected or unsuspected, in the manner and to the extent provided in the Release of Claims Agreement, exhibited to <u>Exhibit CT-1</u> of Thresh 1.

9.      The Amended Credit Agreement, being an amendment of the Credit Agreement dated 13 June 2019, among the Company, Afiniti, Inc., as borrower, the guarantors party thereto, the Term Loan Agent, and each lender from time to time party thereto (as may be

amended, restated, amended and restated, supplemented or otherwise modified from time to time), exhibited to <u>Exhibit CT-1</u> of Thresh 1, and related documents.

30969265.8.M7796.A04375