**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| Afiniti, Ltd.,[1] | Case No. 24-12539 (LSS) |
| Debtor in a Foreign Proceeding. | |

**DECLARATION OF STEVEN SMITH
IN SUPPORT OF VERIFIED PETITION AND MOTION
UNDER CHAPTER 15 FOR (I) RECOGNITION OF A FOREIGN MAIN
PROCEEDING, (II) RECOGNITION OF JPL APPOINTMENT ORDER, (III)
RECOGNITION OF SANCTION ORDER, (IV) APPROVAL OF FREE AND CLEAR
TRANSFER OF ASSETS, (V) APPROVAL OF THE PROCEDURE GOVERNING
THE CLOSING OF THIS CHAPTER 15 CASE, AND (VI) RELATED RELIEF**

I, Steven Smith, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

**INTRODUCTION**

1. I am the Co-Founder and Co-Chief Executive Officer of Smith Goffman Partners LLC ("**SGP**"), the financial advisor of Afiniti, Ltd. (the "**Debtor**" and the "**Foreign Representative**"). I submit this declaration in support of the Foreign Representative's *Verified Petition and Motion Under Chapter 15 for (I) Recognition of a Foreign Main Proceeding, (II) Recognition of JPL Appointment Order, (III) Recognition of Sanction Order, (IV) Approval of Free and Clear Transfer of Assets, (V) Approval of the Procedure Governing the Closing of this Chapter 15 Case, and (VI) Related Relief* (the "**Recognition Motion**")[2] [Docket No. 4].

---

[1] The Debtor's registration number is 45859. The location of the Debtor's registered office is Crawford House, 50 Cedar Avenue, Hamilton, Pembroke, HM 11, Bermuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Recognition Motion.

2.      I am over the age of eighteen and, except as otherwise indicated, all facts and statements set forth in this declaration (this "**Declaration**") are based upon my personal knowledge, my review of relevant documents, information provided to me by or on behalf of the Debtor, and my opinion based on experience and knowledge of the circumstances. If called on to testify, I would testify competently to the facts set forth in this Declaration.

### PERSONAL BACKGROUND AND QUALIFICATIONS

3.      SGP has been the financial advisor of the Debtor since March 2024. I am the Co-Chief Executive Officer of SGP, which I co-founded about a year ago. Prior to that, I was a partner at Aurora Capital Partners for thirteen years, and concurrently a Managing Partner for Aurora Resurgence for nine years. During that time, I also served as a board member of Gener8 Maritime and Euronav. Preceding that, I worked at UBS Investment Bank in various capacities such as Americas Head of Financial Sponsors, the Global Head of Leveraged Finance, and the Global Head of Restructuring. I also worked as a Managing Director for nine years at Donaldson, Lufkin & Jenrette/Credit Suisse, and prior to that was a corporate finance and restructuring attorney at Latham & Watkins LLP for six years. I hold a Bachelor of Arts from the University of California San Diego, a Juris Doctor from the University of California, Los Angeles, and a Master of Business Administration from the University of California, Los Angeles.

### NEGOTIATIONS OF THE PROPOSED RESTRUCTURING

4.      As financial advisor to the Debtor, I personally helped negotiate the Proposed Restructuring and advised the transaction committee established by the Debtor's board of directors (the "**Transaction Committee**") with respect to the same.

5.      Before SGP was involved, the Debtor engaged investment bank Moelis & Company in November 2023 to solicit interest in refinancing proposals, or, as an alternative, some other form of strategic transaction such as a sale or equity raise, as described in greater detail in

paragraph 13 of the Recognition Motion. Such efforts were ultimately unsuccessful, which resulted in the Debtor and the Term Loan Agent, on behalf of the Secured Lenders, beginning negotiations in March 2024 regarding restructuring alternatives. SGP was retained in the early stages of those negotiations to assist the Debtor. SGP also reviewed the marketing process conducted by Moelis and believed that such process was thorough and that proceeding with negotiations with the Term Loan Agent, on behalf of the Secured Lenders, was the best way to maximize the value of the Debtor.

6. In the first half of March 2024, I helped the Debtor prepare an initial proposal for purposes of negotiating with the Term Loan Agent and presented that proposal to the Transaction Committee. In late March 2024 and early April 2024, I attended a series of meetings with the Term Loan Agent to discuss a potential restructuring.

7. The Term Loan Agent rejected the Debtor's initial proposed terms, which underscored a stark contrast in perspectives between the parties with respect to the potential restructuring framework. It was evident from early in the process that bridging these differences would require substantial dialogue and negotiation, with both parties needing to reassess their positions and explore alternative solutions to reach a mutually acceptable agreement. This divergence set the stage for a complex negotiation process, where aligning on a shared vision of the Debtor's future would be crucial to moving forward.

8. Over the following months, the parties continued to negotiate through their respective advisors. Specifically, the Debtor was represented in the negotiations by Latham & Watkins LLP (in addition to SGP), and the Term Loan Agent was represented by A&O Shearman. In late April 2024, the Term Loan Agent offered a counterproposal, which SGP summarized and presented to the Debtor's Transaction Committee. SGP also presented a proposed response at the

same meeting. These negotiations and the exchange of term sheets then continued throughout May and June 2024. After approximately seven turns of the term sheet, on June 7, 2024, the parties reached agreement on a restructuring and memorialized the materials terms for the Proposed Restructuring in a non-binding term sheet. After the parties reached agreement on the term sheet, the Debtor and the Term Loan Agent worked to document the terms of the Proposed Restructuring through a series of documents, including a restructuring support agreement, an amendment to the Debtor's credit agreement, asset and securities transfer agreements, an LLC operating agreement, a release agreement, an indemnity agreement, and other related documents.

9. The Transaction Committee, with the assistance of SGP and Latham & Watkins, negotiated with the Term Loan Agent numerous benefits for stakeholders (other than the Secured Lenders) that are set forth in the documentation for the Proposed Restructuring, including, but not limited to: (i) the assumption and payment of certain ordinary course unsecured trade payables incurred in the ordinary course; (ii) employment of many of the Company's employees; (iii) modification by the Secured Lenders of not less than $522 million of the secured term loans into two tranches, one being a $225 million new senior secured first lien tranche and the other being a new junior secured second lien convertible loan tranche for the balance, with the Debtor having the option to pay interest in kind for the life of such loan; and (iv) the maturities of both loans being extended to 2027 and 2031, respectively. In addition, after the closing of the restructuring transactions, common and preferred shareholders will have the right to subscribe for up to $25 million of second lien convertible loans in Afiniti Newco LLC ("**Newco**") and preferred shareholders will receive Class B Units and Warrants in Newco, in each case, subject to certain eligibility requirements. The benefits obtained by the Debtor and many of its creditors and

shareholders were significant economic concessions made by the Secured Lenders given that their liens cover substantially all of the Debtor's and its subsidiaries' assets.

10. Further, Newco is the entity established by the Term Loan Agent (on behalf of the Secured Lenders) to be the transferee of certain assets currently the subject of a first lien of the Term Loan Agent (on behalf of the Secured Lenders), and Afiniti AI Holdings LLC was established by the Debtor to be the transferee of certain assets currently the subject of a first lien of the Term Loan Agent (on behalf of the Secured Lenders).  At closing, substantially all of the Debtor's assets (other than certain retained cash required to complete the liquidation and de minimis other assets of the Debtor) will be transferred to Holdco and Newco pursuant to the SATA and STA, respectively, in exchange for a release of the guaranty by the Debtor of the $522 million of outstanding term loans and the other benefits to other stakeholders described above.

11. Based on the foregoing, I believe that each of the Debtor, Newco, and Holdco has proceeded in good faith in all respects in connection with the transfer of the Debtor's U.S. assets in that: (i) the transfer thereof pursuant to the SATA and STA was the culmination of an extensive marketing process; (ii) all payments to be made by Newco and Holdco and other agreements or arrangements entered into by each in connection therewith have been disclosed; and (iii) the negotiation and execution of each of the restructuring transaction documents was at arm's length and in good faith.  At all times throughout the process, the Debtor and the Term Loan Agent engaged in hard fought, arm's-length negotiations in connection with the Proposed Restructuring, with each side separately represented by sophisticated advisors.  Based on my involvement throughout the negotiations, I believe all parties participated in good faith and there was no collusion, fraud, or any attempt by any party to take unfair advantage of any other party.

12.     As a result, I believe that Newco and Holdco are good faith transferees of the U.S. assets of the Debtor that are being transferred under the SATA and STA (each as defined in the Recognition Motion).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on this 25th day of November 2024
New York, New York

/s/ *Steven Smith*
Steven Smith
Co-Founder and Co-Chief Executive Officer,
Smith Goffman Partners LLC